United States District Court
Northern District Of Indiana
Hammond Division

Curtis F. Sample, Jr. #891829
(Plaintiff)

vs.

Indiana Department of Correction;
Indiana State Prison; Governor of
Indiana (Eric Holcomb); Commissioner
Robert² Carter, Jr.; Ron Neal
(Warden); Dan McBride (Assistant
Deputy Warden of Programs/Re-Entry);
Kenneth Gann & Mr. Paine (Assistant
Deputy Warden of Operations/
Security); Nextord of Indiana; Mr.
Bodlovich (Supervisor of Classification);
Mr. Newkirk (Grievance Supervisor);
Ofc. Shanta Owens; Ofc. T. Garcia;
Lt. K. St. Martin; Lt. M. Trodo; and
Indiana Department of Social &
Health Services (agency responsible
for the operation of the prison);
Defendants, in their personal and
official capacities.
(Defendants)

-FILED-

JUN 17 2019

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Cause No: 2:19-CV-220

(Jury Trial Demand)

Prisoner Complaint
42 U.S.C. §1983

Complaint
(1)

Comes Now the Plaintiff, Curtis F. Sample Jr. # 891829, pro se, and pursuant to the provisions of I.C. 34-13-3-1, Et. Seq. Files his complaint against Defendants named herein. In support of said complaint, the Plaintiff would respectfully show the following:

## A. Plaintiff

Plaintiff Curtis F. Sample Jr. # 891829, pro se is currently Now confined at the Indiana State Prison in Michigan City, Indiana, and have been confined at the Indiana State Prison in Michigan City, Indiana, at the time of said complaint at hand. The Indiana State Prison is an facility by way of background is operated, managed and is under contract by the Indiana Department of Corrections. There are No other Plaintiff's involved in said complaint. Plaintiff attempted to resolve the said complaint by way of filing "several" Formal Grievances including Formal Appeals to the Grievances (Level II) (which is also attached), in which No Administrative Remedy was reached. The Grievance are # 97763 (Subject: Operations, Institutional—Safety, Sanitation, Environmental Conditions) · # 97766 (Subject: Operations, Institution—Other Operations); and # 101605 (Subject: Operations, Institution—Safety, Sanitation, Environmental Conditions). Including Medical Health Care Forms (which is also attached). Request for Health Care are ISP № 0079 63 · ISP № 017259; and ISP № 017261. Substandard lighting; unsatisfactory plumbing; substandard fire prevention; substandard food service; vermin infestation; inadequate ventilation; safety hazards in the occupational areas; unavailable or inadequate cell cleaning supplies. These conditions falls below minimum standards of

decency and conditions of confinement and violates the plaintiffs' Eighth Amendment rights, which is in fact unconstitutional.

## B. Defendants

(1) Defendant, Indiana Department of Correction was at all times relevant hereto of the Indiana State Prison, and in their personal and official capacity was responsible for the Administrative Procedures Manual of Policies and Procedures of the Indiana State Prison.

(2) Defendant, Indiana State Prison was at all times relevant hereto of the Indiana State Prison, and in their personal and official capacity was responsible for the Confinement Conditions, Shelter and Sanitation of the Indiana State Prison.

(3) Defendant, Governor of Indiana (Eric Holcomb) was at all times relevant hereto of the Indiana State Prison and in their personal and official capacity was responsible for the overall over-seeing of the Commissioner of Indiana State Prison.

(4) Defendant, Commissioner of Indiana (Robert Carter, Jr.) was at all times relevant hereto of the Indiana State Prison, and in their personal and official capacity was responsible for the overall operation of the Indiana Department of Corrections, including the Indiana State Prison.

(5) Defendant, Ron Neal (Warden) was at all times relevant hereto the Warden of Indiana State Prison, and in their personal and official capacity, was responsible for the overall operation of the Indiana State Prison, including the authorization of the cell

re-location and movement of the Plaintiff from the offender general population (cell-house B·CH), to the Mental Health Unit (SMU or SMC) for a period of (12) twelve days, then re-located again to Segregation for a period of more than (5) months, only to be re-located yet again to the Restrictive Housing Unit for more than (10) months, before being released back into General Population.

(6) Defendant, Dan Mc Bride (Assistant Deputy Warden of Programs/Re-Entry) was at all times relevant hereto the Assistant Deputy Warden of Programs/Re-Entry of Indiana State Prison, and in their personal and official capacity was responsible for the overall operation of programs and re-entry of the Indiana State Prison, including the authorization of the custody re-location and movement of the Plaintiff from the offender general population, and to the Mental Health Unit.

(7) Defendant, Kenneth Gann and Waren Payne (Assistant Deputy Warden of Operations/Security) was at all times relevant hereto the Assistant Deputy Warden of Operations/Security of Indiana State Prison and in their personal and official capacity was responsible for the overall operation of the safety and security of the Indiana State Prison, including the authorization of the custody re-location and movement of the Plaintiff from the offender general population, and to the Mental Health Unit.

(8) Defendant, Wexford of Indiana (Health Care) was at all times relevant hereto the provider of the Health Care Services of Indiana State Prison, and in their personal and official capacity was

responsible for the overall operation of the Health Care Services of Indiana State Prison including the denial of medical treatment throughout the (12) day admittance on the Mental Health Unit, even after the Plaintiff complained about being bitten by insects and a vermin which resulted in a skin rash.

(9) Defendant, Mr. Bodlovich (Supervisor of Classification) was at all times relevant hereto the Supervisor of Classification of Indiana State Prison, and in their personal and official capacity was responsible for the classification process and paperwork at Indiana State Prison, including that of the Plaintiff.

(10) Defendant Mark Newkirk (Grievance Specialist Supervisor) was at all times relevant hereto the Supervisor of the Grievance process of Indiana State Prison, and in their personal and official capacity was responsible for the overall operation of the Grievance process of Indiana State Prison including all of the 'denials' of the Plaintiff's grievances that are attached.

(11) Defendant Ofc. Shanta Owens (Correctional Ofc.) was at all times relevant hereto the Correctional Officer of Indiana State Prison, and in their personal and official capacity was responsible for the inmates within B·Cellhouse, of Indiana State Prison on the morning of said complaint. Ofc. Shanta Owens also was un·truthful, and her un·truthfulness resulted in the Plaintiff experiencing the complete nature of said complaint, including an Criminal Case.

(12) Defendant, Ofc. Terrie Garcia (Correctional Ofc.) was at all times relevant hereto the Correctional

Officer of Indiana State Prison, and in their personal and official capacity was responsible for the inmates in the Mental Health Unit of Indiana State Prison on the morning of said complaint. Ofc. Terrie Garcia was also responsible for refusing the Plaintiff cell cleaning supplies to clean the cell that the Plaintiff was confined to within the Mental Health Unit.

(13) Defendant, Lt. Kristine St. Martin (Disciplinary Hearing Ofc.) was at all times relevant hereto the Disciplinary Hearing Officer at Indiana State Prison, and in their personal and official capacity was responsible for authorizing the 5 to 6 Month segregation sentence on Segregation, without an Full and Complete Disciplinary Hearing, because Lt. St. Martin clearly walked out of the Hearing before the Hearing was concluded.

(14) Defendant, Lt. Moses Toodo was at all times relevant hereto the then "Sgt. Moses Toodo" of Indiana State Prison, and in their personal and official capacity was responsible for un-necessary roughness (un-necessary and wanton infliction of pain) that was caused during the escort of the Plaintiff to the Mental Health Unit (SMU), while being Accompanied by Lt. D. Draper and Sgt. Wynn, on the morning of said complaint.

(15) Defendant Indiana Department of Social and Health Services (agency responsible for the operation of the prison) was at all times relevant hereto the agency responsible for the operation of the prison at Indiana State Prison, and in their personal and official capacity was responsible for Shelter. Sanitation. Food. Plumbing. Fire Safety. Safety

Hazards; and Ventilation and Air Flow, of the Indiana State Prison.

## C. Nature of the Case

This is the Plaintiffs' "core complaint" filed against the Defendants in their personal and official capacity for their negligence in Confinement Conditions; Cruel and Unusual Punishment; Medical Treatment; Un-necessary Roughness (un-necessary and wanton infliction of pain); Shelter and Sanitation; Inadequate Food; Inadequate Lighting; Plumbing; Vermin; Fire Safety; Ventilation and Air Flow; Safety Hazards; and Health Care, by failing to maintain sanitary conditions at Indiana State Prison, within the Mental Health Unit (SMU), Disciplinary Segregation Unit (IDU), and Restrictive Housing Unit (D·CH), which is operated and managed by the Indiana Department of Social and Health Services and Indiana State Prison, under the contract of the Indiana Department of Corrections.

Indiana State Prison has a policy within the Mental Health Department/Unit (SMU) of not providing prison inmates "proper beddings, cell cleaning supplies, plumbing excercise outside of the living area, adequate ventilation, and adequate food." Instead, the Plaintiff was forced to be subjected to such conditions for (12) straight days, and Ubecause the holding cells has bodily fluids (such as vomit, blood, feces and urine) that are present on the floor and walls of the holding cells within the Mental Health Unit... the Plaintiff was forced to sleep on soaked and stained mattress with no beddings, even after the Plaintiff complained about conditions

to Correctional Officer Terrie Garcia on numerous occasions. The filthy and un-sanitary conditions was aggravated by insects, bugs and vermin (such as spiders, centerpedes, ants and mice), combined with consistant cold temperature in the holding cells the lack of proper ventilation and bright florescent lights constantly illuminating (24) hours a day, is un-bearing. As a result, the Plaintiff assert that any prison inmate held in the Mental Health Unit at Indiana State Prison holding cells for over (24) hours, are deprived of any meaningful sleep. Plaintiff furthermore, was not permitted to leave the holding cell for excercise or receive visitors, nor was the Plaintiff allowed any legal materials whatsoever. These conditions are substantially different than those in Indiana State Prison general population. Plaintiff assert there are no penal justifications for keeping Plaintiff in the Mental Health Unit holding cell for over (24) hours without adequate bedding, hygeine items cell cleaning supplies, legal materials, excercise or adequate food, especially since prison inmates in the Indiana State Prison general population are not subject to the conditions as such throughout the facility. These conditions of confinement constituted cruel and unusual punishment in violation of the 8th and 14th Amendments. The prison authorities had failed to take remedial action after being notified of those conditions. Robinson v. California 370 US 660 666, 8 L Ed 2d 758, 82 S Ct. 1417 (1962) prohibits the infliction of "cruel and unusual punishment" on those convicted of crimes.

Persons involuntarily confined by the State have a constitutional right to safe conditions of confinement. Not every deviation from ideally safe conditions amounts

to a constitutional violation. However, U.S. Const. Amend. VIII entitles inmates in a penal institution to an adequate level of personal safety. This is required because inmates, by reason of their confinement, cannot provide for their own safety. Failure to provide adequate cell cleaning supplies deprives inmates of tools necessary to maintain minimally sanitary cells seriously threatens their health, and amounts to a violation of the Eighth Amendment. Also the lack of adequate ventilation and air flow undermines the health of inmates and the sanitation of a penitentiary. The areas of shelter, sanitation, food, personal safety, and medical care are the core areas in any U.S. Const. Amend. VIII claim. Adequate clothing is also a core area of consideration in a U.S. Const. Amend. VIII claim. Plaintiff is entitled to be confined in an enviroment which does not result in his degeneration or which threatens his mental and physical well being. U.S. Const. Amend. VIII and XIV require a state to provide a inmate with such living space reasonably adequate ventilation, sanitation, bedding, hulgienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing). Battle v. Anderson, supra, 564 F. 2d at 403. Prison authorities acted maliciously and sadistically for the very purpose of causing harm to Plaintiff by placing him within the confined cell on the Mental Health Unit (SMU).

C(1)     Inadequate Lighting

Adequate lighting is one of the fundamental

attributes of "adequate shelter" required by the Eighth Amendment. The blighting at Indiana State Prison within the Mental Health Unit (SMU), violated the Amendment is based upon that the (24) hour lighting caused eyestrain and fatigue, and hindered attempts to insure sleep and rest!

C.(2)                    Plumbing

Plumbing at Indiana State Prison within the Mental Health Unit (SMU), is in such disrepair as to deprive Plaintiff of basic elements of hygeine and seriously threaten his physical and mental well-being. Such conditions amount to cruel and unusual punishment under the Eighth Amendment. Ramos v. Lamm, 10 Cir., 1980, 639 F. 2d 559, 567-69. Gates v. Collier, 5 Cir. 1974, 501 F. 2d 1291, 1300-03.

C.(3)                    Vermin

There is a vermin (mice) infestation at Indiana State Prison within the Mental Health Unit (SMU). Restrictive Housing Unit (D·CH), and throughout the prison. It concluded that such a condition is inconsistent with the adequate sanitation required by the Eighth Amendment. The health hazard caused by vermin (mice) at the penitentiary is exacerbated by plumbing and ventilation inadequacies. Such vermin (mice) infestation properly considered in the light of unsanitary conditions such as flooded toliets and sinks, and dank air is an un·necessary and wanton infliction of pain proscribed by the Eighth Amendment.

C.(4)                          Fire Safety

The substandard fire prevention at Indiana State Prison within the Mental Health Unit (SMU), Restrictive Housing Unit (D.CH) and throughout the prison endangered the prisoners' lives and therefore violated the Eighth Amendment. Prisoners have the right not to be subjected to the unreasonable threat of injury or death by fire and need not wait until actual casualties occur in order to obtain relief from such conditions. Leeds v. Watson, 9 Cir. 1980, 630 F. 2d 674, 675 - 76. Persons involuntarily confined by the State have a constitutional right to safe conditions of confinement. Not every deviation from ideally safe conditions amounts to an constitutional violation. However, U.S. Const. Amend. VIII entitles inmates in a penal institution to an adequate level of personal safety. This is required because inmates, by reason of their confinement, cannot provide for their own safety.

C.(5)                    Ventilation and Air Flow

The lack of adequate ventilation and air flow at Indiana State Prison within the Mental Health Unit (SMU), Restrictive Housing Unit (D.CH) and throughout the prison undermines the health of inmates and the sanitation of the penitentiary, see Ramos, supra, 639 F. 2d at 569.

C.(6)            Inadequate Cell Cleaning Supplies

Failure to provide adequate cell cleaning

supplies at Indiana State Prison within the Mental Health Unit (SMU), under circumstances such as these deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health and amounts to a violation of the Eighth Amendment. See Ramos, supra, 639 F. 2d at 570.

C(7)                    Safety Hazards

Persons involuntarily confined by the State have a constitutional right to safe conditions of confinement. See Youngberg v. Romeo, 1982, 457 U.S. 307, 315-16, '73 L. Ed. 2d 28, 102 S. Ct. 2452. Santana v. Collazo 1 Cir. 1983, 714 F.2d 1172, 1183. Not every deviation from ideally safe conditions amounts to a constitutional violation. See e.g., Santana at 1183. However, the Eighth Amendment entitles inmates in a penal institution to an adequate level of personal safety. This is required because inmates by reason of their confinement, cannot provide for their own safety. Santana, supra, 714 F. 2d at 1183. See also Estelle v. Gamble 1976, 429 U.S. 97, at 103-04, 50 L. Ed. 2d 251, 97 S. Ct. 285.

C(8)                    Shelter and Sanitation

The building (G:Dorm) at Indiana State Prison which is the Mental Health Unit (SMU) that houses SMU inmates are in a serious state of disrepair and fail to meet the minimal health and safety needs of the ... For example existing heating and also

ventilation systems are incapable of providing adequate temperature control and ventilation in the SMU. Inadequate ventilation, especially in the cells and shower areas, result in excessive odors, heat in showers and low temperature in cells, and humidity with the effect of creating stagnant air as well as excessive mold and fungus growth, thereby facilitating personal discomfort along with health and sanitation problems, which, when is combined with the temperature control and ventilation problems, make the SMU (Mental Health Unit) living area particularly unfit for human habitation.

In addition, there is an extensive problem with rodent and insect infestation in the Mental Health Unit (SMU) Restrictive Housing Unit (D·CH) and throughout Indiana State Prison. Trash, decayed food and other material routinely litter the Mental Health Unit (SMU) and Restrictive Housing Unit (D·CH) cells, and ranges. Nevertheless, many of the health and sanitation deficiencies are "the result of a lack of routine maintenance and cleaning programs." The Mental Health Unit (SMU) inmates are not provided with cleaning materials and supplies to allow them to adequately clean there own cells. The mattresses on the Mental Health Unit (SMU) is heavily stained and soiled, and is not cleaned or changed when a new inmate is assigned to a cell.

## C.(9)                    Food

The State must provide an inmate with a "healthy habilitative environment." This includes

providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it. See, e.g., Palmigiano v. Garrahy, supra, 443 F. Supp. at 962, 979; Laaman v. Helgemoe, supra, 437 F. Supp. at 309, 323; Pugh v. Locke, 406 F. Supp. 318, 329 (M.D. Ala.); Newman v. Alabama, 438 U.S. 915, 98 S. Ct. 3144, 57 L. Ed. 2d 1160.

## C (10)                Health Care

The State has a constitutional obligation "to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251. This duty necessarily requires that the State "make available to inmates a level of medical care which is reasonably designed to meet the routine and the emergency health care needs of inmates." Battle v. Anderson, 376 F. Supp. 402, 424 (E.D. Okla.). Deliberate indifference to serious medical needs is shown when prison official have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment. See, e.g., Inmates of Allegheny Cty. Jail v. Pierce, supra, 612 F. 2d at 762; Todaro v. Ward, 565 F. 2d 48, 52 (2d Cir.). Because inmates are effectively denied access to diagnosis and treatment by qualified healthcare professionals, such conditions endangers their health and well being, cause unnecessary suffering inevitable and

=vince on the part of the State a deliberate indifference to the serious health needs of the prison population. The State has subjected the inmate to cruel and unusual punishment in that it has denied him access to reasonably adequate health care.

## D.   Circumstances

On June 24, 2017 at approximately 12:50 A.M., the Plaintiff was awaken by Correctional Officer Shanta Owens, so that the Plaintiff could go to work. On the above said date and time, the Plaintiff then was residing in Cell-house B, cell-location 411 (South) within Indiana State Prison. The Plaintiff also had a job working in the P.D.R. (kitchen), in which the time for work for the plaintiff would be after the 1:00 A.M. count clears, which is usually some-time around 1:10 A.M. to 1:15 A.M. — so when Officer Shanta Owens observed that the plaintiff was still asleep naturally she awaken the plaintiff. Once Officer Shanta Owens awaken the plaintiff, I then thanked her, and prepared for work. The Plaintiff "quickly" made his normal errands that he conducts before leaving to work each morning. Once the errands was complete, the plaintiff left for work.

Upon reaching work, the plaintiff "checked in" to the assigned Correctional Officer who is assigned to the job detail for the P.D.R. in which the Officer assigned was Toshia Fleming. Once the plaintiff checked in with Officer Toshia Fleming, the plaintiff began to work. After being

At work for about 45 minutes, Sgt. DARRELL DRAPER (now a Lt.), Sgt. WYNN, and Sgt. MOSES Itodo (now a Lt.) came to the plaintiff's work place and told plaintiff to "turn around and cuff up." As the plaintiff was being cuffed the plaintiff asked Sgt. DRAPER "what is this all about?" (since Sgt. DRAPER was the individual hand-cuffing the plaintiff.). Sgt. DRAPER then stated "the Shift Supervisor said come and get you ... but it was something that Ofc. OWENS said. What did you do?" Plaintiff replied "nothing" however, once the plaintiff was hand-cuffed, Sgt. Itodo grabbed the plaintiff and started walking to the Medical Unit for screening, with Sgt. WYNN and Sgt. DRAPER following behind. In between the Medical Unit and the plaintiff's work place the plaintiff and (3) Officers proceed through a locked gate at which time Sgt. M. Itodo banged the plaintiff shoulder forcefully against the fence post as both plaintiff and Sgt. Itodo was passing through because the Sgt. was aggitated behind the plaintiff making remarks about the Sgt. accent speech. Since the plaintiff was handcuffed behind his back, the plaintiff had no way to protect himself from the unwanton infliction of pain that was caused by the Sgt. un-necessary forceful push into the fence post.

Once the screening was complete, plaintiff was escorted to SMU (cell #1) within the Mental Health Unit which is housed in G Dorm. This is where the plaintiff was confined for the next (12) days straight from June 24, 2017 until July 6, 2017. Upon being placed in the SMU cell the plaintiff "immediately" noticed the deplorable

and inhumane conditions of that cell, and had asked Sgt. Draper for cleaning supplies so plaintiff could clean the filthy conditions, however, Sgt. Draper replied "deal with it for now and let the Ofc. working the unit know", as Sgt. Draper left. Sgt. Itodo came to the cell window and said "ha.ha.ha, welcome to SMC, muthaf**ka" and then left. After fully evaluating the cell, plaintiff noticed that this cell contained "urine, human feces, blood, vomitt, and semen on the floor and walls, with also a stained and soiled mattress with no bedding sheets or blanket." Plaintiff immediately brought these conditions to Officer Terrie Garcia who was the Unit Officer of SMU. Ofc. Garcia told the plaintiff that "SMC is different entirely from population, and that I was not allowed anything in the cell", no cleaning supply's or nothing."

Around 3:50 A.M. to 4:30 A.M. the nurse began conducting the passing out of medication on SMU. When Nurse Samantha gave the plaintiff his medication, the plaintiff informed the nurse of the "stiffness, redness and throbbing pain" of the shoulder area that was caused by Sgt. Itodo un-necessary roughness, when Sgt. Itodo forcefully pushed the plaintiff into the fence post ... however, the nurse stated "fill out an health care form" and continued walking.

On June 25, 2017, again the plaintiff attempted to seek cleaning materials to clean the cell and was again denied by Ofc. Garcia.

On June 26, 2017, the plaintiff was awaken by being bitten by an insect or spider, in which the incident was brought to Staff and the

NURSE, in which plaintiff was told to fill out a health care form Although redness and swellness was clearly visible. However, plaintiff never filled out an health care form, because pen and paper is not allowed within the SMU cells. On June 29, 2017 and July 3, 2017 the plaintiff was bitten yet again by insects or spiders, this time a "RASH" by caused from being bitten. Yet again the plaintiff was denied Medical attention. These Insanitary conditions continued throughout the plaintiff's SMU confinement.

On July 6, 2017 the plaintiff was released from the confinement of SMU in Mental Health, and was placed in the Disciplinary Segregation (I.D.U.), in which the plaintiff immediately filled out an health care form in regards to the shoulder and insect swelling and rash that was inflicted by the insect and spider And Also Sgt. Itodo. Plaintiff Also immediately began the Grievance process in regards to the SMU living conditions (see attached Grievances and Health Care Form).

Officer Shanta Owens accused the plaintiff of Allegedly sexual assaulting her then decided to quit working at Indiana State Prison only hours later. However, due to Shanta Owens, Allegations, the plaintiff was confined in the Mental Health Unit for 12 days then placed in Segregation in which the plaintiff was treated inhumanelly. This SMU holding cell was much different than Any holding cell that I ever seen before... this holding cell only contained an video camera, metal slab with an soiled and stained, mattress and a toilet that only flushed with the Assistant of a staff or officer

There was no sheets or blanket and a window stayed open. There was bodily fluids on the floor and walls of this cell (such as blood, vomitt, feces, semen, and urine), and the toliet was clogged up. The sink that is attached to the toliet only ran cold water (no hot water), with the assistant of staff. The entire holding cell and immediate area smelled of feces and urine because the toliet was in-operateable. However, because the plaintiff was denied cleaning supply's by Ofc. Garcia, the plaintiff was forced to sleep and eat in these aggravated and inhumane conditions. The conditions was also aggravated by insects and rodents, the consistent cold temperature, the lack of air flow and ventilation, and the bright florescent lights constantly illuminating the holding cell (24) hours a day. As a result, the plaintiff assert that any prison inmate held within this holding cell for over (24) hours are deprived of any meaningful sleep. Adequate lighting is one of the fundamental attributes of "adequate shelter" required by the Eighth Amendment. (The lighting at SMU violated the amendment is based upon that the (24) hour lighting caused eyestrain and fatigue, and hindered attempts to insure sleep and rest. Also keeping an prison inmate in an holding cell for over (24) hours without proper bedding is against Indiana Department of Corrections policy and is un-constitutional by law. Plaintiff was not allowed and permitted to leave the holding for exercise or to receive visitors at all, which was authorized and directed by the Warden (Ron Neal) and Assistant Deputy Warden (Dan

McBride, Kenneth Gann, and Waren Payne). The reason why was stated for "safety and security reasons", by all (3) defendants. However, these conditions are substantially different than those of Indiana State Prison general population. Plaintiff assert there are no penal justifications for keeping plaintiff in that holding cell for beyond (24) hours, without proper bedding, hygeine items, adequate food, legal materials, visits, adequate lighting, and excercise outside of the living quarters. Spain v. Procunier, 600 F.2d 189, 199 (CA9 1979), states (outdoor excercise required when prisoners otherwise confined in small cells almost 24 hours per day). with Clay v. Miller, 626 F.2d 345, 347 (CA4 1980), states (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day). Indiana State Prison general population are not subjected to these "like conditions", not even Disciplinary Segregation (I.D.U.), or Restrictive Housing Unit (D.C.H).

Plaintiff was provided "inadequate food" by the Staff of Indiana State Prison with the Mental Health Unit (SMU) on June 24, 2017 throughout July 6, 2017 for (12) days total, which resulted in the plaintiff losing weight. The meal portions was inadequate and below the 2,000 calories daily allowance which is required. The meal portions consist of (1) Bologna and Cheese sandwich; (1) fruit (apple or banana); and (1) ½ cup of vegetables portion inside of a sandwich bag, for each meal (breakfast, lunch and dinner). The Mental Health Unit has a widespread practice of keeping holding

are inhumane and un-sanitary and force prison inmates to sleep and eat in such conditions because of the denial of cleaning supply's. Plaintiff also assert that the Mental Health Unit does not allow prison inmates to possess hygeine items within holding cell (such as soap, deodorant, toothpaste, toothbrush, etc.).

Plaintiff was "forced" to live, sleep, and eat in these filthy un-sanitary inhumane and un-constitutional conditions for (12) straight days. These conditions lasted from June 24, 2017 throughout July 6, 2017. Not "once" was the plaintiff seen by the Mental Health Doctor (Mr. Manning). However, after being confined in the Mental Health Unit for an total of (12) days the plaintiff was relocated to the Disciplinary Segregation Unit (I.D.U.) on July 6, 2017 around 10:00 A.M. to 11:00 A.M., in which similar conditions continued, (such as insects and rodents). However, on October 10, 2017 plaintiff was relocated yet again to the Restrictive Housing Unit (D.CH) — in which those same like conditions continued with the insects and rodents. The infestation of rodents was so horrific the plaintiff lost beyond $100 in food and hygeine items due to rodents. The plaintiff made numerous attempts to resolve the issue with the infestation of rodents, to no avail. The plaintiff finally taken measures to resolve the infestation of rodents issue by filing Grievances of these conditions with the Grievance Specialist of Indiana State Prison on March 26, 2018 and April 23, 2018 (see attached Grievances).

As a result to the deplorable un-sanitary

and inhumane conditions at Indiana State Prison with the Mental Health Unit (SMU), Disciplinary Segregation Unit (I.D.U.) And Restrictive Housing Unit (D.CH), the plaintiff endured and suffered numerous insects and spider bites which caused significant swelling and rashs that needed to be treated by Medical. Also plaintiff lost beyond a 100 in food and hygeine items due to rodents, not to mention the unwanton infliction of pain caused by Sgt. M. Itodo due to un·necessary roughness. Plaintiff also suffered "dizziness" due to lack of sleep and water, because of the (24) hour a day flourescent lighting and no accessable water outside from the staff.

Witnesses: (1) Plaintiff. (2) Defendants; (3) Grievance Forms; (4) Health Care Forms; (5) SMU. 1 cell surveilance video camera; (6) Documented log sheet from Mental Health Unit; (7) D.I.S. Bed Movement Sheet; (8) And Anomoance Parties.

E.     Arqument

Defendants had an obligation to maintain "sanitary and humane conditions" within the Indiana State Prison inside the Mental Health Unit (SMU), Disciplinary Housing Unit (I.D.U.), And Restrictive Housing Unit (D.CH). Furthermore, Defendants also had an obligation of not detaining plaintiff in SMU holding cell without the opportunity for at least one (1) hour of exercise outside of

the immediate living quarters five (5) days per week, which is the Indiana Department of Corrections policy and the Eighth and Fourteenth Amendments. See Spain v. Procunier 600 F. 2d 189 199 (CA9 1979); Clay v. Miller, 626 F. 2d 345 347 (CA4 1980). Defendants are prohibited in allowing major change in the heating lighting and ventilation... and also from issuing 'restrictions on "authorized or issued" clothing bedding mail visitation, reading and writing materials, or the use of hygienic materials and facilities, unless these privileges are abused which is also the Indiana Department of Corrections policy and the Eighth and Fourteenth Amendments. See Robinson v. California 370 US 660 666 8 L. Ed 2d 758 82 S Ct. 1417 (1962). U.S. Const. Amend. VIII and XIV. Battle v. Anderson, supra, 564 F. 2d at 403; and Ramos, supra, 639 F. 2d at 569. Defendants also had an obligation not to restrict the plaintiff of medical and dental care, access to the courts, legal counsels, government officials and access to personal papers, and legal materials. Also an deviation from the diet provided to the plaintiff in the facility or program except for documented medical reason(s). See, e.g. Palmigiano v. Garrahy, supra, 443 F. Supp. at 962, 979; Laaman v. Helgemoe, supra, 437 F. Supp. at 309, 323; Pugh v. Locke, 406 F. Supp. 318 329 (M.D. Ala.); Newman v. Alabama, 438 U.S. 915, 98 S. Ct. 3144, 57 L. Ed. 2d 1160; Estelle v. Gamble 429 U.S. 97 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251; Battle v. Anderson, 376 F. Supp. 402,

124 (E.D. Okla.); Inmates of Allegheny Cty. Jail v. Pierce supra, 612 F. 2d at 762; and Todaro v. Ward 565 F. 2d 48, 52 (2d Cir.). Defendants are aware that when the sanctions involving "loss of privileges are imposed", the Indiana State Prison shall ensure that the plaintiff is provided at least minimal access to the privileges (per I.D.O.C. policy) in which the defendants failed to comply with; however the Indiana Department of Corrections addresses this fact within the Policy 02-04-101 the Disciplinary Process for Adult Offenders. However due to the Defendants' negligence the Plaintiff was subjected to these deplorable deviations filthy, humiliating mental abuse, un-sanitary degrading and inhumane conditions of corporal punishment on June 24, 2017 throughout July 6, 2017 combined with the un-necessary roughness that was inflicted by Sgt. M. Itodo. Liability under the Indiana Tort Claim Act of 1971 emanates from the common law duty of reasonable care. Fort Wayne v. Cameron, 370 N.E. 2d 338 (Ind. 1977).

Indiana State Prison, which facility, by way of background, is a facility managed and operated under the contract of the Indiana Department of Corrections. Indiana State Prison is an 35 to 40 feet concrete wall enclosure which operates 24 hours each and every day. Officers and staff work outdoors in guard towers, in check points, in officer's stations and enclosed booths, in maintenance crews, in bio-hazard crews, and in security patrols.

Defendants were aware of the clogged-up toilet within SMU holding cell which confined the plaintiff, also the inadequate food portions, the strip searches, the with-holding legal materials, inadequate clothing, no bedding and hygeine items, also toiletry items. Defendants also were aware of the (24) hour a day bright flourescent lighting situation, not allowing the plaintiff to exercise outside of the immediate living quarters at least one (1) hour per day (5) days a week, and also the bodily fluids on the holding cell floor and walls (such as blood, semen, vomit, feces and urine) — even though the Defendants were aware of the deplorable, filthy degrading, inhumane and un-sanitary conditions within this holding cell... the defendants failed to act and to contact the bio-hazardous crew in regards to the clogged-up toilet. Defendants failed to complement the bio-hazard and maintenance crew an emergency work order — with hundreds of unemployed inmates at Indiana State Prison, there is no reason why issues of this extent should exist. Defendants cannot allege an shortage of man-power as an excuse for their failure to maintain clean, healthy, humane and sanitary conditions of holding cells within the Mental Health Unit (SMU) of Indiana State Prison. With such continuous exposure of prison staff and prison inmates to changing extreme conditions... defendants have no reasonable excuse for their failure to properly maintain clean, healthy, humane and sanitary conditions within the Mental Health Unit at Indiana State

Prison.

Defendants had an affirmative duty to exercise reasonable humane and sanitary conditions of the holding cells within the Mental Health Unit (SMU) at Indiana State Prison. However, the defendants were negligent in failing to maintain an reasonable humane and sanitary conditions of the holding cell, and subjected the plaintiff to such conditions, with bodily fluids on the floor and walls (such as vomit, blood, semen, feces and urine) on June 24, 2017 throughout July 6, 2017. A reasonable person would have foreseen that the failure to clean and sanitize the holding cell, would result in unhealthy, unsafe, inhumane and un-sanitary conditions. Under similar circumstances and conditions, see: Flood, 270 F.R.D. 413; 2010 U.S. Dist. Lexis 70858 2:08 CV 153 and Dunn, 231 F.R.D. at 370.

Defendants, as prison officials were negligent in failing to properly issue bedding, clothing, hygeine materials, legal materials, adequate food, denial of exercise and visits, including un-necessary roughness (due to Sgt. M. Ttodo infliction of unwanton pain). Plaintiff also was subjected to lack of meaningful sleep because of the illuminating bright florescent light plus the consistently cold temperature in the holding cell and lack of ventilation within the Mental Health Unit (SMU) at Indiana State Prison, on June 24, 2017 throughout July 6, 2017. The defendants had proper time, opportunity, knowledge and available resources to improve these conditions that the plaintiff was subjected to for (12) straight days, however,

the defendants were negligent in correcting conditions and failed to act upon correcting the problem . . . and allowed these conditions to continue for (12) days until the plaintiff's relocation to the Disciplinary Segregation Unit (I.D.U.) at Indiana State Prison. Under similar circumstances and conditions, see: Flood, 270 F.R.D. 413; 2010 U.S. Dist. Lexis 70858 and Blihovde, 219 F.R.D. at 616 and Dunn, 231 F.R.D. at 377 and Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Also, refer to the Indiana Department of Corrections, Disciplinary Process for Adult Offenders Policy 02.04.101 (M. 1 through 7 and N.).

Defendants, by their negligence exposed the plaintiff to the danger of diseases and health problems, due to the inhumane and un-sanitary conditions, by their failure to follow reasonable procedures to ensure properly maintained safe, healthy, clean, humane and sanitary conditions. The conditions of confinement constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The prison officials had failed to take proper remedial action after being notified of those conditions. Prison officials acted maliciously and sadistically for the very purpose of causing harm to the plaintiff by placing him within that confined cell on SMU at Indiana State Prison.

F.     Injuries

Plaintiff suffered "swellen, tenderness, throbbing and redness" which was caused by Sgt. Itodo unnecessary roughness and infliction of unwanton pain, which resulted in the plaintiff receiving X-ray's to his right shoulder area. Sgt. Itodo forcefully shoved the plaintiff into the fence post as the plaintiff was handcuffed, from behind, as plaintiff was being escorted to the Medical Unit for screening, before being confined in the Mental Health Unit (SMU). Plaintiff also suffered numerous insects and spider bites that caused "swelling, redness, pain and a rash", while the plaintiff was in the inhumane conditions in the confinement of the Mental Health Unit (SMU). The plaintiff received anti-biotics for the rash and spider and insects bites (see health care forms attached). Plaintiff also suffered "dizziness, night and day chills" due to the lack of clothing, bedding and meaningful sleep and rest that was caused by the (24) hour a day illuminating bright florescent light and constantly cold temperature in the Mental Health Unit (SMU) at Indiana State Prison. These conditions had lasted for (12) days straight from June 24, 2017 throughout July 6, 2017.

## G. Relief

As a result of the pain and suffering in which the plaintiff endured, as a result of the insect and spider bites, unnecessary roughness,

confinement conditions, cruel and unusual punishment, medical treatment, shelter and sanitation, inadequate food and lighting, denial of exercise, denial of legal materials, and visits, vermin, the swelling corporal punishment, mental abuse, humiliation, degrading, and punitive interference with the daily functions of living (such as sleeping and eating) because of the defendants negligence plaintiff seek declaratory and injunctive relief, as well as $600,000 in compensatory and punitive damages.

Respectfully Submitted

Curtis F. Sample c Jr.
Curtis F. Sample c Jr.
Plaintiff,


Affirmation

I hereby affirm under the penalties for perjury that the foregoing representations are true and correct.


Curtis F. Sample c Jr.
Curtis F. Sample c Jr.
Plaintiff,

**UNITED STATES DISTRICT COURT**

_Northern_ **DISTRICT OF INDIANA**

_Hammond_ **DIVISION**

_Curtis F. Sample Jr._ )
Petitioner, )
)
_I.D.O.C.; Indiana State_ )
_Prison; Et. Al._ )
Respondent. )

CAUSE NO.: _____

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I _Curtis F. Sample Jr._ hereby verify under penalty of perjury that a copy of the above and foregoing _Prisoner Complaint (1983)_, has been served upon:

_District Court Clerk Office_
_Hammond Division_
_5400 Federal Plaza_
_Hammond, Indiana 46320_

by personally handing the document to the appropriate prison official for placement into the institution's internal mailing system designed for legal mail on this _13th_ day of

_June_ , 20 _19_ .

_Curtis F. Sample Jr._
Petitioner, _pro se_

_Curtis F. Sample Jr. #891829_
(Printed Name)                DOC#
Indiana State Prison
1 Park Row St.
Michigan City, IN 46360

**REQUEST FOR HEALTH CARE**
State Form 45913 (R3/9-12)
Approved by State Board of Accounts, 2012

INDIANA DEPARTMENT OF CORRECTION

**ISP**

## TO BE COMPLETED BY OFFENDER

I request Health Care Services as follows:

☑ Sick Call ☐ Dentist ☐ Prescription Refill ☐ Mental Health ☐ Other *(specify)* _____

Nature of Complaint:

I was bitte _____ _____ my ARM was _____ on the gate of Sgt. Tate - Tate & I need X Rays! Trans _____

By my signature, I hereby indicate that I understand that, in accordance with IC 11-10-3-5, I may be charged $5.00 for Health Care Services obtained at my request and $5.00 for initial *(new)* prescriptions. I understand that any charge for these services and/or prescriptions shall be withdrawn automatically from my Trust Fund Account. I will not receive a receipt for this withdrawal; however, I may review the balance of my Trust Account as provided by facility procedures.

Signature of Offender: _____

Printed Name: _____ Sample _____

DOC Number: 31 _____

Date Signed: *(month, day, year)* 7-0-17

## TO BE COMPLETED BY HEALTH CARE STAFF

Response of Health Care Staff:

7-11-17  968-985-79-18 - 120184-197H
Hydrocortisone Imrash
Xray (R) shoulder. CMC

*IF AN APPOINTMENT HAS BEEN SCHEDULED, BE ALERT FOR YOUR CALL OUT.*

Signature of Health Care Staff: _____

Date Signed: *(month, day, year)* 7-11-17

## TO BE COMPLETED BY HEALTH CARE STAFF/FOR BUSINESS OFFICE USE

Was a New Prescription Provided?
☑ Yes ☐ No

TOTAL AMOUNT OF CO-PAYMENT: $ 10.00

Amount of Co-Payment:
☑ $5.00 Health Care Contact
☑ $5.00 New Prescription

Signature of Health Care Staff: _____

Date Signed: *(month, day, year)* 7-11-17

**ISP**

### PATIENT IDENTIFICATION

Full Name of Patient: _____

DOC Number: _____

Date of Birth: *(month, day, year)* _____

**DISTRIBUTION:** **White** - Health Care Chart
**Canary** - Offender/Business Office

**REQUEST FOR HEALTH CARE**
State Form 45913 (R3/9-12)
Approved by State Board of Accounts, 2012

INDIANA DEPARTMENT OF CORRECTION

**ISP**

| TO BE COMPLETED BY OFFENDER |
|---|

I request Health Care Services as follows:

☐ Sick Call      ☐ Dentist      ☐ Prescription Refill      ☐ Mental Health      ☑ Other *(specify)*_____

Nature of Complaint: On Friday 7.14.17 I had X-rays done on my right shoulder. I would like to know the results of my X-rays please. Thank you so very much

By my signature, I hereby indicate that I understand that, in accordance with IC 11-10-3-5, I may be charged $5.00 for Health Care Services obtained at my request and $5.00 for initial *(new)* prescriptions. I understand that any charge for these services and/or prescriptions shall be withdrawn automatically from my Trust Fund Account. I will not receive a receipt for this withdrawal; however, I may review the balance of my Trust Account as provided by facility procedures.

| Signature of Offender: | Printed Name: Curtis F. Sample, Jr. | DOC Number: 891829 | Date Signed: *(month, day, year)* 7.19.17 |
|---|---|---|---|

| TO BE COMPLETED BY HEALTH CARE STAFF |
|---|

Response of Health Care Staff:

Referred To Provider, If needed.
X-ray Results - negative (7-19-17)

| IF AN APPOINTMENT HAS BEEN SCHEDULED, BE ALERT FOR YOUR CALL OUT. |
|---|

| Signature of Health Care Staff: | Date Signed: *(month, day, year)* 7/26/17 |
|---|---|

| TO BE COMPLETED BY HEALTH CARE STAFF/FOR BUSINESS OFFICE USE |
|---|

Was a New Prescription Provided?     ☐ Yes   ☑ No

Amount of Co-Payment:   ☐ $5.00 Health Care Contact   ☐ $5.00 New Prescription

| TOTAL AMOUNT OF CO-PAYMENT: | $ |
|---|---|

| Signature of Health Care Staff: | Date Signed: *(month, day, year)* 7/26/ |
|---|---|

| PATIENT IDENTIFICATION |
|---|

Full Name of Patient: Sample

DOC Number: 891829

Date of Birth: *(month, day, year)*

**ISP**

**DISTRIBUTION:   White** - Health Care Chart
**Canary** - Offender/Business Office

## REQUEST FOR HEALTH CARE

State Form 45913 (R3/9-12)

Approved by State Board of Accounts, 2012

INDIANA DEPARTMENT OF CORRECTION

**ISP**

### TO BE COMPLETED BY OFFENDER

I request Health Care Services as follows:

☒ Sick Call ☐ Dentist ☐ Prescription Refill ☐ Mental Health ☐ Other *(specify)*_____

Nature of Complaint: My foot & leg is in EXTREME pain & numb. I would like to have my pain medication upgraded As soon as possible, please. Also, My shoulder is still giving me problems & stiffing up on me... Even after the X-ray results were negative.

By my signature, I hereby indicate that I understand that, in accordance with IC 11-10-3-5, I may be charged $5.00 for Health Care Services obtained at my request and $5.00 for initial *(new)* prescriptions. I understand that any charge for these services and/or prescriptions shall be withdrawn automatically from my Trust Fund Account. I will not receive a receipt for this withdrawal; however, I may review the balance of my Trust Account as provided by facility procedures.

| Signature of Offender: | Printed Name: | DOC Number: | Date Signed: *(month, day, year)* |
|---|---|---|---|
| *Curtis F. Sample Jr.* | Curtis F. Sample Jr. | 891829 | 8-9-17 |

### TO BE COMPLETED BY HEALTH CARE STAFF

Response of Health Care Staff:
VH 131.3   X-ray (-) Rt. Knee
BP 143/96 (not threatening) (VH)
                 MD Aware. NT-
T 94.5          PFQ.
P 89
R 16
SpO2 98
                 9/1/17 Sch. for appt. med

### IF AN APPOINTMENT HAS BEEN SCHEDULED, BE ALERT FOR YOUR CALL OUT.

| Signature of Health Care Staff: | Date Signed: *(month, day, year)* |
|---|---|
| | 8/30/17 |

### TO BE COMPLETED BY HEALTH CARE STAFF/FOR BUSINESS OFFICE USE

| Was a New Prescription Provided? | TOTAL AMOUNT OF CO-PAYMENT: |
|---|---|
| ☐ Yes    ☐ No | $_____ |

| Amount of Co-Payment: ☐ $5.00 Health Care Contact ☐ $5.00 New Prescription | Signature of Health Care Staff: | Date Signed: *(month, day, year)* |
|---|---|---|

**ISP**

### PATIENT IDENTIFICATION

Full Name of Patient: Sample

DOC Number: 891829

Date of Birth: *(month, day, year)*

## INDIANA DEPARTMENT OF CORRECTION
### REQUEST FOR INTERVIEW

TO: _Wallen_ OFFICE: _Grievances_ DATE: _6-3-13_

NAME: _Sample_ DOC#: _891829_ DORM: _DE-114_ ASSIGNMENT: _____

Reason for Request: (be as definite as possible) _____

_Need 4 grievance Appeals_ _____

_____

_____

_____

_____

**★★★DO NOT WRITE BELOW THIS LINE★★★**

Action: _Mr. Sample, I only see 1 grievance eligible for an appeal. Please send that in indicating you disagree and with your signature. Thanks,_

State Form 36935 (R/4-91) By: _J. Wallen_

# INDIANA DEPARTMENT OF CORRECTION
## REQUEST FOR INTERVIEW

TO: Mr. J. Wallen     OFFICE: Grievance Specialist     DATE: 4-5-18     JDW

NAME: C.F. Sample, Jr.     DOC#: 891829     DORM: D.E.114     ASSIGNMENT: A15 Idle

Reason for Request: (be as definite as possible) Greetings !!! I AM REQUESTING AN Grievance Appeal as soon as possible, please. I disagree with the results. Thank you so much —

Curtip F. Sample, Jr.

★ ★ ★ DO NOT WRITE BELOW THIS LINE ★ ★ ★

Action: Mr. Sample, please send in the Response Report indicating your disagreement. Thanks,

State Form 36935 (R/4-91)     By: J. Wallen



**OFFENDER COMPLAINT – INFORMAL PROCESS LEVEL**
State Form 52897 (6-14)
DEPARTMENT OF CORRECTION

*INSTRUCTIONS: Offender completes Section I ONLY and returns the form to the Offender Grievance Office for processing.*

| SECTION 1 – OFFENDER COMPLAINT *(To be completed by offender.)* ||
|---|---|
| * Information is required. ||
| Name of offender * Curtis F. Sample Jr. | DOC number * # 891829 |
| Dormitory * IDU·231· West   Job * Idle ||

List the department OR the name of the staff person(s) about which you are complaining, if any. *
I.S.P.·Ofc. Owens· Medical Dept.· SMC · & Sgt. Tote·Tote

Provide a brief explanation of your complaint * *(Your complaint MUST be legible. Multi-page statements are NOT accepted.)*
On 6·24·17, I was taken to SMC for allegedly Sexual Assaulting Ms. Owens. for 12 days I was subjected to inhumane, deplorable & filthy conditions & also was refused cleaning supply's & Medical treatment by Samantha after being bitten by a bug on SMC, & Sgt. Tote·Tote banging my arm into a gate while transporting me to SMC. There was blood, human feces, urine, vomit, semen & other filthy things on the floor & walls of this cell.

| Signature of offender   Curtis F. Sample Jr. | Date *(month, day, year)* * 7·6·17 |
|---|---|
| Signature of Grievance Specialist upon acceptance | Date received in Grievance Office *(month, day, year)* |

| SECTION 2 – REVIEWING STAFF |
|---|
| *(To be completed by department head or custody supervisor. Response is due within ten (10) working days.)* |

I, _____ , have reviewed the above informal complaint and recommend:
    Printed name

☐ Resolution *(Explain below.)*  ☐ Unable to resolve this informal complaint because: *(Explain below.)*

Explanation and how resolved. If unable to resolve, explain why not. *(Please write legibly.)*

On 6-25-17 you did have a Seg Screen completed, you did allow vitals but refused to answer questions. Please forward all other issues to custody.

| Signature of staff   M J. Sheri. 50, RN, HSA | Date *(month, day, year)* 7-14-17 |
|---|---|

| SECTION 3 – ACKNOWLEDGEMENT |
|---|
| This informal complaint has been resolved as acknowledged by the signatures below. |

| Signature of offender | Date *(month, day, year)* |
|---|---|
| Signature of Grievance Specialist | Date *(month, day, year)* |

| SECTION 4 – DISAGREEMENT |
|---|
| I, the offender, by signing in this section, DO NOT agree with the findings / actions of the informal response listed in Section 2 above. |
| ☑ I disagree with the resolution |

| Signature of offender   Curtis F. Sample Jr. | Date *(month, day, year)* 7·17·17 |
|---|---|



**OFFENDER COMPLAINT – INFORMAL PROCESS LEVEL**
State Form 52897 (6-14)
DEPARTMENT OF CORRECTION

*INSTRUCTIONS: Offender completes Section I ONLY and returns the form to the Offender Grievance Office for processing.*

| SECTION 1 – OFFENDER COMPLAINT *(To be completed by offender.)* | |
|---|---|
| * Information is required. | |
| Name of offender * Curtis F. Sample R. | DOC number * # 891829 |
| Dormitory * IDU·231· West | Job * Idle |

List the department OR the name of the staff person(s) about which you are complaining, if any. *
I.S.P.· Ofc. Owens-Medical Dept·SMC·& Sgt. Tote-Tote

Provide a brief Explanation of your complaint * *(Your complaint MUST be legible. Multi-page statements are NOT acceptable.)*
On 6·24·17, I was taken to SMC for allegedly Sexual Assaulting Ms. Owens.
for 12 days, I was subjected to inhumane-deplorable & filthy conditions &
Also was refused cleaning supply's & medical treatment by Samantha after
being bitten by a bug on SMC & Sgt. Tote-Tote banging my arm into a gate
while transporting me to SMC. There was blood human feces, urine, vomit,
semen & other filthy things on the floor & walls of this cell.

| Signature of offender * Curtis F. Sample R. | Date *(month, day, year)* 7·1·17 |
|---|---|
| Signature of Grievance Specialist upon acceptance | Date received in Grievance Office *(month, day, year)* |

| SECTION 2 – REVIEWING STAFF |
|---|
| *(To be completed by department head or custody supervisor. Response is due within ten (10) working days.)* |

I, _____, have reviewed the above informal complaint and recommend:
Printed name

☐ Resolution *(Explain below.)*     ☐ Unable to resolve this informal complaint because: *(Explain below.)*

Explanation and how resolved. If unable to resolve, explain why not. *(Please write legibly.)*

On 6-25-17 you did have a Sex Screen
Completed, you did allow Vitals, but refused
to answer questions. Please forward all other
issues to custody.

| Signature of staff M. J. Shari SD, R4, HJA | Date *(month, day, year)* 7-14-17 |
|---|---|

| SECTION 3 – ACKNOWLEDGEMENT |
|---|
| This informal complaint has been resolved as acknowledged by the signatures below. |

| Signature of offender | Date *(month, day, year)* |
|---|---|
| Signature of Grievance Specialist | Date *(month, day, year)* |

| SECTION 4 – DISAGREEMENT |
|---|
| I, the offender, by signing in this section, DO NOT agree with the findings / actions of the informal response listed in Section 2 above. |
| ☑ I disagree with the resolution |

| Signature of offender Curtis F. Sample R. | Date *(month, day, year)* 7·1·17 |
|---|---|



**OFFENDER GRIEVANCE**
State Form 45471 (R3 / 11-14)
DEPARTMENT OF CORRECTION

| FOR OFFICIAL USE ONLY |
|---|
| Grievance number |

| To: EXECUTIVE ASSISTANT | Facility [illegible] | Date *(month, day, year)* [illegible] |
|---|---|---|
| From *(name of offender and DOC number)*: [illegible] | Signature of offender [illegible] | |
| Housing assignment [illegible] | Date of incident *(month, day, year)* [illegible] | |

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance. *(NOTE: A Single ONE-sided 8½" X 11" sheet of paper may be attached if necessary to explain your grievance.)*

[illegible] I was refused cleaning materials & supplies to clean the [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] I called the nurse came to my cell [illegible] [illegible] [illegible] [illegible] [illegible]

State the relief that you are seeking.

I would like my [illegible] refunded back to my account [illegible] [illegible] legal materials, [illegible] [illegible]

| Signature of executive assistant | Date *(month, day, year)* |
|---|---|
| | |



**OFFENDER GRIEVANCE**
State Form 45471 (R3 / 11-14)
DEPARTMENT OF CORRECTION

| | FOR OFFICIAL USE ONLY |
|---|---|
| | Grievance number |
| | 97763 |

| To: **EXECUTIVE ASSISTANT** | Facility ISP | Date (month, day, year) 7·27·17 |
|---|---|---|

From (name of offender and DOC number):
Curtis F. Sample Jr. #891829

Signature of offender
Curtis F. Sample Jr.

Housing assignment
IDU·251·West

Date of incident (month, day, year)
6·24·17 thru 7·6·17

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance.
(NOTE: A Single ONE-sided 8½" X 11" sheet of paper may be attached if necessary to explain your grievance.)

On 6·24·17 thru 7·6·17, I was subjected to deplorable & inhumane conditions while being housed on the SMC unit in Mental Health. For 12 days I was refused cleaning supply's & materials, after being placed & confined in a deplorable & un·sanitary cell within this unit. There was human feces, urine, blood, vomit & semen on the floors & walls of this cell. After, I was confined to this filthy cell by Sgt. Mr. Draper, Sgt. Ms. Wind & another unknown Sgt. — I brought these conditions to the Sgt., & was told to "deal with it for now & let the Dfc. working the unit know about it" which was said by Sgt. Mr. Draper... however, the unknown Sgt. said, "ha·ha·ha·ha, welcome to SMC, muthafucka", & left. Later on, I spoke to the Dfc. of the unit, being Dfc. Ms. Garcia of these un·sanitary conditions — & she told me that "SMC is different entirely from population, & that I was not allowed anything within that cell, no cleaning supply's or nothing." Throughout the 12 day's on SMC, I tried numerous of times to try & clean the cell... but I was refused & denied by different Dfc.'s & other Staff members.

State the relief that you are seeking.

My relief that I seek is for inmates to receive cleaning supply's & materials on the SMC unit to clean their cells with — because inmates shouldn't have to be subjected to deplorable & un·sanitary conditions.

| Signature of executive assistant Vickie Jong 0129 | Date (month, day, year) August 7, 2017 |
|---|---|



**Indiana Department of Correction**

Indiana State Prison

## RECEIPT - ADMINISTRATIVE REMEDY

**Date:** 07-AUG-17

**From:** Vickie Long
ISP

**To:** Curtis Sample
ISP

**DOC#:** 891829
**Housing:** ID-2W-231
**Current Facility:** ISP

**THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST IDENTIFIED BELOW:**

**Case ID:** 97763                          **Level:** I - Formal Grievance

**Date Received:** 07-AUG-17

**Response Due:** 29-AUG-17

**Subject:** Operations, Institution-Safety, Sanitation, Environmental Conditions

# Indiana Department of Correction
## Indiana State Prison
### Offender Grievance Response Report
**Case Log #: 97763**

| | | |
|---|---|---|
| **DOC No:** 891829 | **Offender Name:** Curtis Sample | **Bldg/Range/Bed:** ID-2W-231 |
| **Current Facility:** ISP | | |

---

**TOPIC:** Operations, Institution - Safety, Sanitation, Environmental Conditions    **Incident Date:** 21-JUL-17

## Response

| LEVEL | Form Issue Date | Level Receive Date | Response Date |
|---|---|---|---|
| I - Formal Grievance | 27-JUL-17 | 07-AUG-17 | 28-AUG-17 |

**Level Response**

Lt. Tatum advised when a SMU cell is occupied by an offender and moves out, the cell is cleaned by the Porters. You are correct when you state that you were refused cleaning supplies. Cleaning supplies are not given to SMC offenders.

Lt. Tatum stated when an offender who is housed in SMC leave his cell to take a shower, porters enter the cell to clean it during that time. Grievance Addressed.

_____
**Executive Assistant**

9-28-17
**Date**

_____
**Student/Offender**

8·30·17
**Date**

_____ Agree    _____ Disagree



**INDIANA DEPARTMENT OF CORRECTION**
**OFFENDER GRIEVANCE PROGRAM**
**GRIEVANCE RESPONSE**
State Form # 45472

GRIEVANCE NUMBER:
97763

| TO: OFFENDER NAME AND DOC NUMBER:<br>Sample, Curtis #891829 | FACILITY:<br>ISP | GRIEVANCE DATE:<br>07/27/2017 |
|---|---|---|

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT:<br>ID-231 |
|---|---|

STAFF PERSON(S) CONTACTED IN RESOLVING THIS GRIEVANCE:
Lt. Christopher Tatum

Lt. Tatum advised when a SMU cell is occupied by an offender and moves out, the cell is cleaned by the Porters. You are correct when you state that you were refused cleaning supplies. Cleaning supplies are not given to SMC offenders.

BASED ON THE ABOVE FINDINGS, THE FOLLOWING RESOLUTION TO THIS GRIEVANCE IS PROVIDED:
Lt. Tatum stated when an offender who is housed in SMC leave his cell to take a shower, porters enter the cell to clean it during that time. Grievance Addressed.

| PRINTED NAME OF RESPONDER:<br>Vickie Long | SIGNATURE OF RESPONDER:<br>*Vickie Long* | DATE OF RESPONSE:<br>August 28th 2017 |
|---|---|---|

IF YOU DO NOT AGREE WITH THE RESPONSE, YOU MAY FILE AN APPEAL TO THE FINAL REVIEWING AUTHORITY BY SUBMITTING AN APPEAL TO THE FACILITY EXECUTIVE ASSISTANT WITHIN 5 WORKING DAYS FROM THE RECEIPT OF THIS RESPONSE. V. L.



**OFFENDER GRIEVANCE**
State Form 45471 (R3 / 11-14)
DEPARTMENT OF CORRECTION

| | FOR OFFICIAL USE ONLY |
|---|---|
| | Grievance number |
| | 97766 |

| To: **EXECUTIVE ASSISTANT** | Facility ISP | Date *(month, day, year)* 7·28·17 |
|---|---|---|

From *(name of offender and DOC number)*: Curtis F. Sample Jr. # 891829

Signature of offender: Curtis F. Sample, Jr.

Housing assignment: IDU· 231· West

Date of incident *(month, day, year)*: 6·24·17·· 6·26·17 & 6·27·17

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance.
*(NOTE: A Single ONE-sided 8½" X 11" sheet of paper may be attached if necessary to explain your grievance.)*

On 6·24·17, I was transported to SHC in the Mental Health Dept. by Sgt. DRAPER, Sgt. Wind, & Sgt. Idoto. During the transportation to SHC, Sgt. Idoto had ran the right side of my torso into the gate·pole as we were passing thru the gate, causing my right shoulder to "slam" into the pole. As the day continued on — My shoulder began to "stiffen up & throb." Around 3:30 A.M. to 4:30 A.M., when Nurse Samantha came to pass out medication on SHC, I brought this situation to her attention — & Nurse Samantha told me to "fill out an Health Care Form" & walked away from cell. That day I was refused medical attention. On 6·26·17, I was bitten by a Spider or insect & my arm began to swell up — yet again I was refused medical attention & told to fill out an "Health Care Form. By the next day (6·27·17), a rash had began to form on my arm & when brought to the Nurses attention... I was denied yet again. On 7·6·17, I was released from SHC & finally able to put in an Health Care Form on both situations, & seen by the Nurse on 7·11·17 (2 weeks later). An X·ray was ordered & I was treated for the rash for the Spider or insect bite... & later ordered to pay $10 medical fee, that ordinary would have been free if I was taken to Medical when I was on SHC when the injury's occured.

State the relief that you are seeking.

My relief is for the $10 to be re·funded back to my account, because my shoulder injury & rash was caused, due to the Staff negligence. If I was taken to Medical when the injury had occured & while on SHC — I would never had been charged the $10 Medical Bill.

| Signature of executive assistant Vickie Long 8/29 | Date *(month, day, year)* August 7, 2017 |
|---|---|



**Indiana Department of Correction**

## RECEIPT - ADMINISTRATIVE REMEDY

**Date:** 07-AUG-17

**From:** Vickie Long
ISP

**To:** Curtis Sample
ISP

**DOC#:** 891829

**Housing:** ID-2W-231

**Current Facility:** ISP


**THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST IDENTIFIED BELOW:**

**Case ID:** 97766

**Level:** I - Formal Grievance

**Date Received:** 07-AUG-17

**Response Due:** 29-AUG-17

**Subject:** Operations, Institution-Other Operations

# Indiana Department of Correction
## Indiana State Prison
## Offender Grievance Response Report
### Case Log #: 97766

**DOC No:** 891829     **Offender Name:** Curtis Sample      **Bldg/Range/Bed:** ID-2W-231

**Current Facility:** ISP

---

*TOPIC:* **Operations, Institution - Other Operations**                    **Incident Date:**

## Response

| LEVEL | Form Issue Date | Level Receive Date | Response Date |
|---|---|---|---|
| I - Formal Grievance | 28-JUL-17 | 07-AUG-17 | 28-AUG-17 |

**Level Response**
According to the Shift report there was no injuries reported.

You will not receive a refund to your Offender Trust Account as you initiated any actions that caused you to be screened by medical. Staff was not in any way negligent and any services you received from medical, you were appropriately charged. Grievance Addressed.

**Executive Assistant**                                                **Date**

**Student/Offender**                                                  **Date**

_____ Agree _____ Disagree



INDIANA DEPARTMENT OF CORRECTION
**OFFENDER GRIEVANCE PROGRAM**
**GRIEVANCE RESPONSE**
State Form # 45472

GRIEVANCE NUMBER:

97766

| TO: OFFENDER NAME AND DOC NUMBER: Sample, Curtis #891829 | FACILITY: ISP | | GRIEVANCE DATE: 06/27/2017 |
|---|---|---|---|
| WORK ASSIGNMENT: | | HOUSING ASSIGNMENT: ID-231 | |

STAFF PERSON(S) CONTACTED IN RESOLVING THIS GRIEVANCE:
Shift Report Incident – June 25th, 2017

According to the Shift report there was no injuries reported.

BASED ON THE ABOVE FINDINGS, THE FOLLOWING RESOLUTION TO THIS GRIEVANCE IS PROVIDED:
You will not receive a refund to your Offender Trust Account as you initiated any actions that caused you to be screened by medical. Staff was not in any way negligent and any services you received from medical, you were appropriately charged. Grievance Addressed.

| PRINTED NAME OF RESPONDER: Vickie Long | SIGNATURE OF RESPONDER: | DATE OF RESPONSE: August 28th 2017 |
|---|---|---|

IF YOU DO NOT AGREE WITH THE RESPONSE, YOU MAY FILE AN APPEAL TO THE FINAL REVIEWING AUTHORITY BY SUBMITTING AN APPEAL TO THE FACILITY EXECUTIVE ASSISTANT WITHIN 5 WORKING DAYS FROM THE RECEIPT OF THIS RESPONSE. V. L.

INDIANA DEPARTMENT OF CORRECTION
**OFFENDER GRIEVANCE PROGRAM**
**GRIEVANCE APPEAL**
State Form #45473

GRIEVANCE NUMBER:

# 97766

| TO: OFFENDER NAME AND DOC NUMBER | FACILITY: | GRIEVANCE DATE: |
|---|---|---|
| Curtis F. Sample, Jr. #891829 | ISP | 7·28·17 |

HOUSING ASSIGNMENT:
IDU· 231· West

DATE GRIEVANCE RESPONSE RECEIVED:
August 28, 2017

REASON FOR AN APPEAL TO THE GRIEVANCE RESPONSE:
(NOTE: Please ensure that a copy of the original Grievance, a copy of the Response and any other needed information is attached to this appeal when it is submitted.)

You stated that "I initiated any actions that caused me to be screened by Medical & Staff was not negligent in any way." Also, according to Shift Report there was no injuries reported. This is not true — I never initiated any actions that caused any medical screening... especially considering that I was taken to Medical directly from work (PDR). Plus Staff was in fact "negligent". Since Sgt. Idoto "purposefully" ran me into the gate/fence out of vengefulness & to be spiteful. Also injury report was reported — Nurse Samantha Grisutis & Ofc. Ms. T. Garcia is a witness to the reporting. Therefore my funds should be reimbursed to my account.

SIGNATURE OF OFFENDER:
Curtis F. Sample, Jr.

DATE:
8·31·17

**FOR OFFICIAL USE ONLY**

DATE APPEAL RECEIVED BY EXECUTIVE ASSISTANT:

DATE APPEAL FORWARDED TO CENTRAL OFFICE:

SIGNATURE OF EXECUTIVE ASSISTANT:

DATE:

DATE RECEIVED IN CENTRAL OFFICE:

NAME OF PERSON RECEIVING APPEAL:



**OFFENDER GRIEVANCE**
State Form 45471 (R4 / 4-17)
DEPARTMENT OF CORRECTION



APR 0 2 2018

FOR OFFICIAL USE ONLY

Grievance number

101605

| To: **Facility Grievance Specialist** | Facility I.S.P. | Date (month, day, year) 3·28·18 |
|---|---|---|

From (name of offender)

Curtis F. Sample c Jr.

DOC number # 891829

Signature of offender Curtis F. Sample c Jn.

Housing assignment

D.E.114

Date of incident (month, day, year) 3·26·18 & previously!

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance.
(NOTE: A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.)

On Monday, 3·26·2018, I heard a Rodent inside of my gray property box. eating my comminsary. Previously, I have caught "numerous" rodents inside of this cell with the paper mouse traps. However, there are no more of those paper mouse traps being issued to offenders — so therefore, offenders are forced to deal with the major infestation of rodents throughout the cell-house which is highly un-sanitary. I have asked our counselor & the Lt. of this cell-house on numerous occassions for mouse traps... but I'm told "that there are no mouse traps." I am losing food/comminsary because of these rodents. I have complained about this, but it's going unheard. These rodents are an extreme health hazard.

State the relief that you are seeking.

Provide the cell-house with mouse traps, like sanitation use to do... that way the offenders can at least slow the infestation of rodents down from entering their cells & eating up comminsary. Thanks alot ——

| Signature of Facility Grievance Specialist J. Wallen | Date (month, day, year) 4-2-18 |
|---|---|



## RECEIPT - ADMINISTRATIVE REMEDY

**Date:** 02-APR-18

**From:** Joshua Wallen
ISP

**To:** Curtis Sample
ISP

**DOC#:** 891829
**Housing:** DE-DE1- 114
**Current Facility:** ISP

**THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST IDENTIFIED BELOW:**

**Case ID:** 101605                                    **Level:** I - Formal Grievance

**Date Received:** 02-APR-18

**Response Due:** 24-APR-18

**Subject:** Operations, Institution-Safety, Sanitation, Environmental Conditions

USDC IN/ND case 2:19-cv-00220 document 1 filed 06/17/19 page 50 of 58



# Indiana Department of Correction
## Offender Grievance Response Report
### Case Log #: 101605

APR 2 9 2018



**DOC No:** 891829     **Offender Name:** Curtis Sample          **Bldg/Range/Bed:** DE-DE1- 114

**Current Facility:** ISP

---

*TOPIC:* Operations, Institution - Safety, Sanitation, Environmental Conditions          **Incident Date:** 26-MAR-18

## Response

| LEVEL | Form Issue Date | Level Receive Date | Response Date |
|-------|-----------------|--------------------|---------------|
| I - Formal Grievance | 28-MAR-18 | 02-APR-18 | 19-APR-18 |

**Level Response**

Lt. Connelly states in an email that he had recently received 20 mouse traps and is in the process of handing them out. These are given out in a first come first serve basis.

GRIEVANCE ADDRESSED

J. Wallen
**Executive Assistant**

4-19-18
**Date**

Curtis F. Sample, Jr.
**Student/Offender**

4.19.18
**Date**

_____ Agree ___✓___ Disagree

19-APR-18 10:37 AM                          Page 1 of 1



**RECEIPT OF FACILITY LEVEL I APPEAL**
State Form 56285 (4-17)
INDIANA DEPARTMENT OF CORRECTION

| From:<br><br>J. Wallen | | Date *(month, day, year)*<br><br>4-30-18 |
|---|---|---|
| Name of offender<br><br>Sample, Curtis | | DOC number<br><br>891829 |
| Facility<br><br>ISP | Housing assignment<br><br>DE-114 | |

### THIS ACKNOWLEDGES THE RECEIPT OF YOUR FACILITY LEVEL I APPEAL REQUEST BELOW.

| Log identification number<br><br>101605 | Date *(month, day, year)*<br><br>4-30-18 | Response due *(month, day, year)*<br><br>5-7-18 |
|---|---|---|



**Indiana Department of Correction**

Indiana State Prison

## Offender Grievance Response Report

### Case Log #: 101605

**DOC No:** 891829  **Offender Name:** Curtis Sample  **Bldg/Range/Bed:** DE-DE1-114-

**Current Facility:** ISP

---

*TOPIC:* **Operations, Institution - Safety, Sanitation, Environmental Conditions**  **Incident Date:** 26-MAR-18

## Response

| LEVEL | Form Issue Date | Level Receive Date | Response Date |
|---|---|---|---|
| I - Formal Grievance | 28-MAR-18 | 02-APR-18 | 19-APR-18 |

**Level Response**

Lt. Connelly states in an email that he had recently received 20 mouse traps and is in the process of handing them out. These are given out in a first come first serve basis.

GRIEVANCE ADDRESSED

FACILITY APPEAL RESPONSE  4-30-18

Your appeal has been reviewed. Level 1 response is appropriate.

APPEAL DENIED

M. Newkirk for Warden Neal

_____

**Executive Assistant**

4-30-18

**Date**

*Curtis F. Sample, c/o n.*

**Student/Offender**

_____ Agree __✓__ Disagree

5-1-18

**Date**

To: Mr. J. Wallen (Grievance Specialist)
From: C.F. Sample, Jr. #891829   D.E.114
Date: April 19, 2018

Greetings!!! I received your response today in regards to my Grievance (Level I Case Log # 101605). I disagree with the response & would like to have an Grievance Appeal please. I disagree because as I picked up my legal mail today from Lt. Connelly — I asked Lt. Connelly for Mouse Traps & whether were there any available... & Lt. Connelly told me "No, none have been sent in as of today." However you stated in your response that Lt. Connelly stated in an email "that he received 20 Mouse Traps & they will be passed out on a first come, first served basis." Even if that was the case — this cell-house contains more than 300 offenders... 20 Mouse Traps will not even supply 1/3 of the cell-house offenders.

Also, can you please send me back my "Grievance Response Report", please. I need it for my file. Thank you so very much —

Curtis F. Sample, Jr.
#891829   D.E.114

JRW

To: Mr. J. Wallen   (Grievance Specialist)
From: C.F. Sample Jr.  # 891829       D.E.114
Date: May 1, 2018

    Greetings ☺!!! I received the (Facility Appeal Response 4.30.18') to my original Grievance Case Log # 101605. I strongly disagree with the response & would like to procede to the next level, please. Basically the facility response is that "they don't really care about the infestation of the rodents & the rodents being an Safety Sanitation & Environmental Condition issue" because my appeal was denied... & all I asked them for was "Mouse Traps."

    Therefore I am requesting to procede to the next level please. Also can you please send me back a copy of everything for my file please. Thank you so very much ☺.

       Curtis F. Sample Jr.
       # 891829        D.E.114



**GRIEVANCE APPEAL**
State Form 45473 (R3 / 4-17)
DEPARTMENT OF CORRECTION
OFFENDER GRIEVANCE PROGRAM

APR 3

| FOR OFFICIAL USE ONLY |
|---|
| Grievance log number |
| 101605 |

Date form sent to offender *(month, day, year)*
April 23, 2018

Date of grievance *(month, day, year)*
March 28, 2018

Name of offender
Curtis F. Sample Jr.

DOC number
# 891829

Facility
ISP

Housing assignment
D-E-114

Date grievance response received *(month, day, year)*
April 19, 2018

Facility level appeal:

On 3-28-18, I filed an grievance in regards to the rodents within the facility and the lack of Mouse Traps to try and contain this un-sanitary and health hazard situation. I was told on the grievance response, that, Lt. Connelly recently had received (20) Mouse Traps and they will be handed out on a first come first serve basis. However, there are over 300 offenders in this cell-house and (20) Mouse Traps will not even supply 1/3 of the offenders within the cell-house. Just last night I chased 3 rodents out of this cell, and Ofc. Tyler is a witness to the incident. I am in "disagreement" of the grievance response because I asked constantly for Mouse Traps and I still have not received any. My only request was to receive Mouse Traps to try and contain the rodent situation... and still I have not received any Mouse Traps as of today.

Signature of offender
Curtis F. Sample Jr.

Date signed *(month, day, year)*
4.23.18

Facility level response:

Signature of warden / designee

Date signed *(month, day, year)*

| Please check the appropriate box and return this form to the Facility Grievance Specialist. |
|---|
| ☐ Agree with facility appeal response. |
| ☐ Disagree with facility appeal response. Send appeal to Department Offender Grievance Manager. |

Signature of offender

Date signed *(month, day, year)*

**DISTRIBUTION:** Copy – Facility Grievance Specialist; Copy – Department Grievance Manager; Copy – Offender Packet, Facility; Copy - Offender



**GRIEVANCE APPEAL**
State Form 45473 (R3 / 4-17)
DEPARTMENT OF CORRECTION
OFFENDER GRIEVANCE PROGRAM

APR 3 0...

| FOR OFFICIAL USE ONLY |
|---|
| Grievance log number |
| 101605 |

Date form sent to offender *(month, day, year)*
April 23, 2018

Date of grievance *(month, day, year)*
March 28, 2018

Name of offender
Curtis F. Sample Jr.

DOC number # 891829

Facility ISP

Housing assignment
D·E·114

Date grievance response received *(month, day, year)*
April 19, 2018

Facility level appeal:

On, 3·28·18, I filed an, Grievance in regards to the rodents within the facility and the lack of Mouse Traps to try and contain this un·sanitary and health hazard situation. I, was told on the Grievance Response, "that, Lt. Connelly recently had received (20) Mouse Traps and they will be handed out on a first come first serve basis." However, there are over 300 offenders in this cell·house and (20) Mouse Traps will not even supply 1/3 of the offenders within the cell·house. Just last night I chased 3 rodents out of this cell, and Ofc. Tyler is a witness to the incident. I am in 'disagreement' of the Grievance Response because I asked constantly for Mouse Traps and I still have not received any. My only request was to receive Mouse Traps to try and contain the rodent situation... And still I have not received any Mouse Traps as of today.

Signature of offender
Curtis F. Sample, Jr.

Date signed *(month, day, year)*
4·23·18

Facility level response:

Please see attached

Signature of warden / designee

Date signed *(month, day, year)*
4·30·18

**Please check the appropriate box and return this form to the Facility Grievance Specialist.**

☐ Agree with facility appeal response.

☑ Disagree with facility appeal response. Send appeal to Department Offender Grievance Manager.

Signature of offender
Curtis F. Sample, Jr.

Date signed *(month, day, year)*
5·1·18

DISTRIBUTION: Copy – Facility Grievance Specialist; Copy – Department Grievance Manager; Copy – Offender Packet, Facility; Copy - Offender

## RECEIPT - ADMINISTRATIVE REMEDY

**Date:** 03-MAY-18

**From:** Joshua Wallen
ISP

**To:** Curtis Sample
ISP

**DOC#:** 891829
**Housing:** DE-DE1- 114
**Current Facility:** ISP

**THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST IDENTIFIED BELOW:**

**Case ID:** 101605

**Level:** II - Formal Appeal

**Date Received:** 03-MAY-18

**Response Due:** 04-JUN-18

**Subject:** Operations, Institution-Safety, Sanitation, Environmental Conditions



### Indiana Department of Correction
# Offender Grievance Response Report
### Case Log #: 101605

**DOC No:** 891829    **Offender Name:** Curtis Sample      **Bldg/Range/Bed:** DE-DE1- 114

**Current Facility:** ISP

---

*TOPIC:* Operations, Institution - Safety, Sanitation, Environmental Conditions     **Incident Date:** 26-MAR-18

## Response

| LEVEL | Form Issue Date | Level Receive Date | Response Date |
|-------|-----------------|--------------------|---------------|
| I - Formal Grievance | 28-MAR-18 | 02-APR-18 | 19-APR-18 |

**Level Response**

Lt. Connelly states in an email that he had recently received 20 mouse traps and is in the process of handing them out. These are given out in a first come first serve basis.

GRIEVANCE ADDRESSED

FACILITY APPEAL RESPONSE  4-30-18

Your appeal has been reviewed.  Level 1 response is appropriate.

APPEAL DENIED

M. Newkirk for Warden Neal

---

| LEVEL | Form Issue Date | Level Receive Date | Response Date |
|-------|-----------------|--------------------|---------------|
| II - Formal Appeal | 01-MAY-18 | 03-MAY-18 | 04-MAY-18 |

**Level Response**

Agree with Facility Level Response.  Mouse traps were supplied on a first come first serve basis.
Grievance Appeal Denied
Mr. T. Cambe
Alternate Final Reviewing Authority Policy #00-02-301


_____

**Executive Assistant**

5·10·18

**Date**


_____

**Student/Offender**

_____

**Date**

07-MAY-18 07:34 AM